UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOHN L. DEAN,<br><br>        Petitioner,<br><br>  vs.<br><br>RAUL LOPEZ, Warden,<br><br>        Respondent.<br>_____ / | No. C 10-2465 PJH (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. For the reasons set out below, the petition is denied.

**BACKGROUND**

On June 30, 2008, a jury found petitioner guilty in count one, of battery with serious bodily injury, *see* Cal. Penal Code § 243(d), and in count two, of assault by means likely to produce great bodily injury, *see* Cal. Penal Code § 245(a)(1). Respondent's Exhibit ("Resp. Exh.") B9 at 716. As to count two, the jury found true the allegation that petitioner personally inflicted great bodily injury, *see* Cal. Penal Code § 12022.7(a). *Id.* at 717. On July 23, 2008, the court sentenced petitioner to seven years in prison, consisting of the aggravated term of four years on count two, with a consecutive three year term for the bodily injury enhancement, and stayed an aggravated term of four years on count one. Resp. Exh. B10 at 741-42. On September 14, 2009, the California Court of Appeal affirmed the judgment. Resp. Exh. D. A petition for review was summarily denied by the

California Supreme Court on December 2, 2009.  Resp. Exh. E.  Petitioner did not seek further review in the state courts.

The facts, as described by the California Court of Appeal, are as follows:

**A.     Prosecution Case**

**1.  Witness Testimony**

On the evening of March 7, 2008, one of defendant's neighbors overheard defendant and the victim, Jennifer Reed, arguing on the porch of defendant's apartment in Novato.  According to the neighbor's testimony and police report, defendant told Reed to "get off my porch" and then hit her in the face with the screen door.  Another neighbor saw Reed sitting in the passenger seat of defendant's van and heard a sound like someone "violently hit" the side of the van.  The neighbor overheard defendant tell Reed that he was taking her to the police and then saw them drive away.

Shortly after 7:00 a.m. the next morning, Ryan Hoog found Reed on the driveway to his father's large ranch in Nicasio.  She was slumped over on the side of the road, her face and head were covered with mostly dried blood, her face was bruised and swollen, and the back of her shirt was soaked in blood.

When Deputy Sheriff Alisia Lellis of the Marin County Sheriff's Office arrived, Reed told her, "My boyfriend did this," and that her boyfriend's name was "JD."  According to Lellis, Reed said defendant beat her with his hands and fist, and stabbed her.  Reed told Lellis that the assault took place in her apartment and in defendant's van, and she provided the sheriff's office with a cell phone number that was tracked to defendant.  Another officer testified that when he initially reported to the hospital where Reed had been taken he saw that she appeared to have written defendant's name on her arms.

During an interview several days later, Reed told Detective Sophia Winter of the Novato Police Department that she had a sexual relationship with defendant and they had been dating for approximately three weeks.  Winter testified that an investigation of defendant's van turned up "several handwritten notes addressed to a person named JD from a person named Jenn."

During an interview on March 8, 2008, defendant told Officer Steven Cogan of the Novato Police Department that he had known Reed for three months prior to the incident.  Defendant admitted to Cogan that Reed had been at his residence on the evening before she was found in Nicasio.  According to defendant's initial statement to Cogan, "she wanted to have sex with him, and he didn't want to have sex with her, and that they got into an argument, and she was trying to hit him, and he slapped her or hit her on the right side of her face."  Defendant told Cogan he then "loaded up" Reed into his van and took her to the street where she lived.

Cogan testified that he searched defendant's van and found it had cardboard covering the side rear windows, the backseat had been removed, and it contained sleeping bags and a bag containing "sex toys,"

2

including some ties. At defendant's apartment, he found Reed's broken eyeglasses near the screen door. Cogan stated that he did not find blood or apparent signs of struggle in Reed's apartment, defendant's home, or in his van. He also reported that defendant had a small cut on his right hand and his knuckles were noticeably redder than on his left hand.

During a subsequent search of the Hoogs' driveway, Novato Police Sergeant Keith Heiden and Detective Jehan Amdjadi found a cigarette butt near where Reed had been located. Senior criminalist Amy Rojas of the California Department of Justice tested the cigarette butt and determined that only defendant's DNA was present on it.

### 2. Victim Testimony

Reed testified on direct examination that she had known defendant for a month prior to the attack, she considered him to have been her boyfriend, and they were sexually active together. On March 7, 2008, defendant offered to give her a ride home in his cab and then gave her speed. Defendant took Reed into her bedroom, tied her to the bed, and hit her multiple times in the face. She testified that he then threw her into his van and said, "I'm going to take you out to Bolinas. I'm going to leave you out there for death [ sic ]." Defendant then dumped Reed in a field where she remained all night until police officers arrived and picked her up the next morning. Reed claimed that she did not go to defendant's apartment.

On cross-examination, Reed testified that one of her previous boyfriends also beat her. She denied, however, making prior reports of rape and assault, and denied making abuse allegations against her current boyfriend. Reed said that the attack on March 7, 2008 occurred in her apartment and defendant's van, and she bled in both locations. She stated that defendant tried to strangle her with a necktie and used a knife on her head. She disagreed with defense counsel that police found her in Nicasio, rather than Bolinas. Reed again claimed she had never been to defendant's apartment. She also denied writing a note to defendant telling him that she knew where he lived. Reed testified that she told police defendant stored speed in a secret compartment in his van.

### 3. Testimony Regarding Victim Competence

Prior to trial, defendant filed a motion in limine objecting to any attempt by the prosecution to find Reed incompetent under Evidence Code section 701. Defendant argued that if the court determined Reed to be incompetent, the case should be dismissed. The court granted defendant's motion and no preliminary ruling was made on the issue of Reed's testimonial competence.

At trial, the prosecution presented several witnesses regarding Reed's mental status. Her psychologist, Dr. Telford Moore, testified that she suffers from moderate mental retardation, cognitive disorder, disruptive behavior disorder, and depression. He opined that, as a result of her mental disabilities, she has difficulty absorbing and retaining large amounts of information, making tasks such as responding to numerous questions potentially overwhelming.

Moore stated that although Reed at times says things that are inconsistent

3

or out of context, he found no evidence of hallucinations and does not believe she suffers from a psychotic or thought disorder. The psychologist testified that he did not know Reed to intentionally lie, but instead believes that she merely makes misstatements based on "whatever sounds right at the time." He also stated that Reed does not know these misstatements are objectively untrue, "[a]t least half the time."

Reed's social services coordinator, Crystal Hayes, testified that Reed has problems "on both sides of ... receptive communication ." She stated that Reed has difficulties understanding conversations, and that when Hayes says something to Reed "she's not going to get from it often what I actually said."

Raymond Lemis, Reed's direct care provider, testified that "she knows the difference between right and wrong.... [W]hen she does tell me something that's untrue, she pulls way back."

### B. Defense Case

Defendant presented several witnesses who testified as to multiple occasions where Reed made false accusations of rape and assault, and later recanted those allegations.

Reed was recalled as a defense witness. On direct examination she testified that she smokes cigarettes and occasionally "bummed them" from other people, but denied ever taking any from defendant. She indicated that defendant's roommate gave her his address, and that defendant himself gave her his cell phone number.

Defendant was called as a defense witness and testified to generally the same details of the evening of March 7, 2008 as he had previously reported to investigating officers. On cross-examination, defendant admitted that he used ties during sex.

### C. Verdict, Judgment, and Appeal

The jury convicted defendant of both counts, and found true the allegation, as to count two, that he inflicted great bodily injury. The trial court sentenced defendant to a total prison term of seven years.

Resp. Exh. D at 2-5 (footnotes omitted).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

4

proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). However, when presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This review is not a "de novo review of the constitutional issue;" rather, it is the only way a federal court can determine whether

a state-court decision is objectively unreasonable where the state court is silent. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## DISCUSSION

As grounds for federal habeas relief, petitioner asserts that: (1) his rights to due process and confrontation were violated because his conviction was based upon the testimony of a victim (Reed) who could not differentiate between truth and falsehood; (2) his constitutional rights were violated by the trial court's failure to intervene *sua sponte* when it became apparent that the victim was incompetent to testify; and (3) trial counsel was ineffective for failing to challenge the witness's competence at trial. Petition for Writ of Habeas Corpus ("Hab. Pet.") at 6. The court dismissed the second issue for failing to state a cognizable claim of constitutional error. Petitioner's remaining claims will be addressed on the merits.

### I.   Victim's Testimonial Competence

Petitioner claims that his due process and confrontation rights were violated because his conviction was predicated on the testimony of a witness who could not distinguish between truth and falsity. Hab. Pet. Exhibit ("Exh.") 1 at 3.

**A. Factual Background**

**(i) Trial Court**

Petitioner filed a pretrial motion in limine, pursuant to Cal. Evid. Code 767, to prevent the prosecution from asking Reed leading questions due to her cognitive impairment. Resp. Exh. A1 at 106-07. Petitioner argued that the statute was designed to assist children under the age of ten or persons having substantial cognitive impairment, and that Reed's impairment was not the type envisioned by the statute. *Id.* at 107. Petitioner also pointed out that Reed was capable of telling a coherent story, and that the state's burden should not be reduced by her disability because her credibility was the primary issue in the case.

*Id.* Petitioner also filed a motion in limine, pursuant to Cal. Evid. Code 701, to prevent the prosecution from claiming that Reed should be disqualified as a witness due to her incompetence. *Id.* Petitioner argued that the case should be dismissed if the court determined that Reed was not qualified as a witness because she was incapable of telling the truth. *Id.* The trial court, after noting that the prosecution had made no such requests, granted the motions. Resp. Exh. B3 at 70-71. No further issues regarding Reed's testimonial competence were raised in the trial court.

### (ii) California Court of Appeal

On direct appeal, petitioner argued that the victim was incompetent to testify because she was incapable of understanding her duty as a witness to tell the truth. Hab. Pet. Exh. 1 at 3-6. The California Court of Appeal concluded that petitioner waived this claim because he failed to object to the victim's competency at any stage of the trial. Resp. Exh. D at 6. The court further determined that, even had the objection been raised, the claim would have failed on the merits. *Id.* The appellate court found little evidence to show that Reed lacked the intellectual capacity to understand her obligation to tell the truth, rather, it indicated that her understanding of that duty was not steadfast or reliable because she occasionally became confused or made unintentional misstatements, much like any witness was prone to do. Resp. Exh. D at 7. These infirmities were matters of credibility for the jury to assess, and did not indicate that Reed was incapable of differentiating fact from fiction. *Id.* Although Reed's testimony was inconsistent and she sometimes misspoke or said things that were out of context, the court found that her account of the attack was neither impossible nor improbable, and that her testimony fell well short of the threshold required for a finding of incompetency. *Id.* at 7-8. Because petitioner failed to establish Reed's incompetency by a preponderance of the evidence, the jury was entitled to consider whether her testimony was credible. *Id.* at 6, 8. Accordingly, even if petitioner had raised a timely objection, the trial court would not have abused its discretion by allowing the testimony. *Id.*

Petitioner also argued that Reed was "immune from cross-examination" because

she could not distinguish between truth and reality. Hab. Pet. Exh. 1 at 4-5. The Court of Appeal rejected this argument based on its conclusion that Reed was competent to testify. Resp. Exh. D at 9. The court further observed that petitioner took full advantage of the opportunity to cross-examine Reed, and that "[t]here was a sufficient confluence of lucid testimony and corroborating evidence" to satisfy the court that the jury had an "adequate basis on which to evaluate the truth of [Reed's] testimony." *Id.* In view of these findings, the court determined that petitioner's Sixth Amendment right to confrontation was satisfied. *Id.*

### B. Discussion

#### (i) Due Process

Before this court, petitioner again contends that his right to due process was violated because his conviction was based on the testimony of a victim who could not distinguish between truth and falsity. Hab. Pet. at 6. Petitioner failed to raise a contemporaneous objection to the victim's competence to testify, therefore he is procedurally barred from raising this issue on appeal. *See Vansickel v. White*, 166 F.3d 953, 957 (9th Cir. 1999).

Even if this claim were cognizable, it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law") (citation omitted). Petitioner's claim that Reed was incompetent to testify is grounded exclusively in California law. Resp. Exh. D at 6. First, under California law, anyone is qualified to be a witness, and a witness can be disqualified only if she is incapable of expressing herself understandably concerning the testimonial matter, or incapable of understanding the duty to tell the truth. *See People v. Anderson* 25 Cal. 4th 543, 572-73 (2001). Second, California law places the burden of proof on the party challenging a witness's competence to testify, and a trial court's determination on the matter will be upheld in the absence of a clear abuse of discretion. *Id.* at 573. Finally, California law requires the challenging party to establish proof of a witness's incompetency by a preponderance of the evidence. *See People v. Lewis*, 26 Cal. 4th 334, 360 (2001).

1. Applying these state law principles, the Court of Appeal found that petitioner failed to meet his burden of proving, by a preponderance of the evidence, that Reed was incapable of expressing herself or understanding her duty to testify truthfully. Resp. Exh. D at 6-8. The state court's interpretation of its own competency standard is binding upon this court. *See United States v. Ramos*, 39 F.3d 219, 220 (9th Cir. 1994) ("a state court's interpretation of its statutes is binding on the federal courts unless a state law is inconsistent with the Federal Constitution").

In any event, after reviewing the record and the relevant state law, it is clear that the state court correctly determined that Reed was competent to be a witness. Petitioner, through his pretrial motions in limine, sought to prevent the prosecution from claiming that Reed should be disqualified as a witness because her cognitive impairment prevented her from testifying truthfully. Resp. Exh. A1 at 106-07. Instead, petitioner argued that Reed did not suffer from a "substantial" impairment of the type that was envisioned by the statute, and that she was "capable of telling a coherent story." *Id.* These motions demonstrate that petitioner's strategy was to attack Reed's credibility by exploiting her disability to confuse her, and then to highlight any inconsistencies or misstatements in her testimony to argue reasonable doubt to the jury. Petitioner's argument before this court that Reed's testimonial incompetence is a basis for granting habeas relief is quite disingenuous as his entire trial strategy depended upon Reed being qualified as a witness so that he could discredit her testimony. Reed's testimony concerning the attack, despite some inconsistencies, was well within the realm of possibility, and there is no indication that she was delusional or unable to distinguish truth from falsehood. Resp. Exh. B6 at 356-412; *see also, e.g. People v. Lyons*, 10 Cal. App. 4th 837, 842-44 (1992) (finding that a witness was delusional and unable to distinguish truth from lies where the testimony was both contradictory and fantastic). In view of the record as a whole, the state court's decision denying relief on this claim was not unreasonable. *See Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was

not merely wrong, but actually unreasonable").

### (ii) Right to Confrontation

Petitioner also contends that Reed's inability to distinguish between truth and falsity rendered her immune from cross-examination. Hab. Petition at 6, Exh. 1 at 5. This argument lacks merit. As discussed *supra* in section I, Reed was competent to testify under California law. In any event, the record reflects that petitioner conducted a thorough cross-examination that enabled the jury to assess Reed's credibility on the key issue, and was in no way hampered by any reluctance or inability on her part to answer the questions posed. Resp. Exh. B6 at 367-412. Petitioner also called Reed as a witness in his case-in-chief in an attempt to further impeach her credibility. Resp. Exh. B8 at 567-69. The Sixth Amendment right of confrontation is satisfied "when the defense is given a full and fair opportunity to probe and expose [the witness's] infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *See Delaware v. Fensterer*, 474 U.S. 15, 22 (1985). Accordingly, the state court reasonably found that petitioner had a constitutionally sufficient opportunity to cross-examine Reed.

## II.     Ineffective Assistance of Counsel

Petitioner contends that trial counsel was ineffective for failing to challenge Reed's competence to testify. Hab. Pet. at 6. As discussed *supra* in section I, petitioner filed a pretrial motion in limine seeking to prevent the prosecution from claiming that Reed should be disqualified as a witness due to her mental impairment. Resp. Exh. A1 at 106-07. The trial court granted the motion and no further issue regarding Reed's testimonial competence was raised during trial. *Id.* The California Court of Appeal found that trial counsel reasonably chose not to object based on Reed's incompetence and instead to present the issue of Reed's credibility to the jury. Resp. Exh. D at 10.

In order to succeed on an ineffective assistance of counsel claim, the petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires him to show deficient performance and prejudice. Deficient

performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To establish prejudice, petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. If a petitioner cannot establish that defense counsel's performance was deficient, it is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

Petitioner's claim lacks merit. Counsel's decision to attack Reed's credibility, rather than to challenge her competence, was a reasonable strategic choice in view of the fact that she had made several dubious claims of abuse in the past and was unclear about certain specifics of the assault. *See Strickland*, 466 U.S. at 690-91. Petitioner fails to show that counsel's failure to object to Reed's competence constituted deficient performance rather than reasonable trial strategy. In any case, petitioner fails to establish prejudice under *Strickland* because, in light of the state court's finding that Reed was competent, he cannot demonstrate a reasonable probability that the result of the proceeding would have been different had counsel raised the objection. *See Strickland*, 466 U.S. at 694. "Failure to raise a meritless argument does not constitute ineffective assistance." *See Moorman v. Ryan*, 628 F.3d 1102, 1109-10 (9th Cir. 2011) *quoting Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985). Accordingly, the state court's determination that petitioner was not denied effective assistance of counsel was not contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d); *Strickland*, 466 U.S. at 687.

### III.   **Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

11

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal). *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issues satisfy this standard. *See id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons set out above, jurists of reason would not find the result debatable or wrong. A certificate of appealability will be denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A Certificate of Appealability also is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 21, 2013.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.10\DEAN2465.HC.wpd

12